# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**CATALINA J. ARAGON,**

    **Plaintiff,**

    vs.                                                                                             Civ. No. 17-554 SCY

**NANCY A. BERRYHILL, Acting**
**Commissioner of the Social Security**
**Administration,**

    **Defendant.**

## MEMORANDUM OPINION AND ORDER[1]

**THIS MATTER** is before the Court on the Social Security Administrative Record (Doc. 14)[2] filed October 6, 2017, in connection with Plaintiff's *Motion to Reverse and Remand for Rehearing With Supporting Memorandum,* filed December 5, 2017. Doc. 17. Defendant filed a Response on February 6, 2018. (Doc. 19.) And Plaintiff filed a Reply on February 22, 2018. Doc. 20. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). Having meticulously reviewed the entire record and the applicable law and being fully advised in the premises, the Court finds that Plaintiff's motion is well taken and shall be **GRANTED**.

## I. BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Catalina J. Aragon (Ms. Aragon) alleges that she became disabled on November 6, 2012, at the age of forty, because of a learning disability, anxiety attacks, posttraumatic stress syndrome, depression, ganglion cyst, carpal tunnel syndrome, diabetes, and

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings, and to enter an order of judgment, in this case. (Docs. 7, 10, 11.)

[2] Hereinafter, the Court's citations to Administrative Record (Doc. 14), which is before the Court as a transcript of the administrative proceedings, are designated as "Tr."

arthritis. (Tr. 172, 176.) Ms. Aragon completed the eleventh grade in 1990, and has worked as a truck stop cook, motel housekeeper, gas station cashier, and cotton field laborer. Tr. 177.

Ms. Aragon protectively filed an application for Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1381, *et seq.,* on January 15, 2013. Tr. 15, 151-57. Ms. Aragon's application was denied at the initial level, Tr. 64, 65-79, 98-101, and at reconsideration, Tr. 80-94, 95, 105-09. Upon Ms. Aragon's request, Administrative Law Judge (ALJ) Ann Farris held a hearing on August 5, 2015. Tr. 30-53. On January 13, 2016, ALJ Farris issued a written decision concluding that Ms. Aragon was "not disabled" pursuant to the Act. Tr. 12-25. On March 16, 2017, the Appeals Council denied Ms. Aragon's request for review, rendering ALJ Farris's January 13, 2016, decision the final decision of Defendant the Commissioner of the Social Security Administration. Tr. 1-3. Ms. Aragon timely filed a complaint on May 16, 2017, seeking judicial review of the Commissioner's final decision. Doc. 1.

## II. APPLICABLE LAW

### A. Disability Determination Process

A claimant is considered disabled for purposes of Social Security disability insurance benefits or supplemental security income if that individual is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Social Security Commissioner has adopted a five-step sequential analysis to determine whether a person satisfies these statutory criteria. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps of the analysis are as follows:

(1) Claimant must establish that she is not currently engaged in "substantial gainful activity." If Claimant is so engaged, she is not disabled and the analysis stops.

(2) Claimant must establish that she has "a severe medically determinable physical or mental impairment . . . or combination of impairments" that has lasted for at least one year. If Claimant is not so impaired, she is not disabled and the analysis stops.

(3) If Claimant can establish that her impairment(s) are equivalent to a listed impairment that has already been determined to preclude substantial gainful activity, Claimant is presumed disabled and the analysis stops.

(4) If, however, Claimant's impairment(s) are not equivalent to a listed impairment, Claimant must establish that the impairment(s) prevent her from doing her "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [Claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. § 404.1545(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* § 404.1545(a)(3). Second, the ALJ determines the physical and mental demands of Claimant's past work. Third, the ALJ determines whether, given Claimant's RFC, Claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled and the analysis stops.

(5) At this point, the burden shifts to the Commissioner to show that Claimant is able to "make an adjustment to other work." If the Commissioner is unable to make that showing, Claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005).

**B.** **Standard of Review**

A court must affirm the denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 800-01 (10th Cir. 1991). In making these determinations, the reviewing court "neither

reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). For example, a court's disagreement with a decision is immaterial to the substantial evidence analysis. A decision is supported by substantial evidence as long as it is supported by "relevant evidence . . . a reasonable mind might accept as adequate to support [the] conclusion." *Casias*, 933 F.3d at 800. While this requires more than a mere scintilla of evidence, *Casias*, 933 F.3d at 800, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

Similarly, even if a court agrees with a decision to deny benefits, if the ALJ's reasons for the decision are improper or are not articulated with sufficient particularity to allow for judicial review, the court cannot affirm the decision as legally correct. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). As a baseline, the ALJ must support his or her findings with specific weighing of the evidence and "the record must demonstrate that the ALJ considered all of the evidence." *Id.* at 1009-10. This does not mean that an ALJ must discuss every piece of evidence in the record. But, it does require that the ALJ identify the evidence supporting the decision and discuss any probative and contradictory evidence that the ALJ is rejecting. *Id.* at 1010.

### III. ANALYSIS

The ALJ made her decision that Ms. Aragon was not disabled at step five of the sequential evaluation. (Tr. 24-25.) The ALJ determined that Ms. Aragon had not engaged in substantial gainful activity since January 15, 2013, the date of her application. Tr. 17. She found that Ms. Aragon had severe impairments of affective disorder, anxiety disorder, personality

4

disorder, drugs/substance addiction disorder, carpal tunnel syndrome, and obesity.[3]  Tr. 17.  The

ALJ determined, however, that Ms. Aragon's impairments did not meet or equal in severity one

of the listings described in the governing regulations, 20 CFR Part 404, Subpart P, Appendix 1.

Tr. 18-19.  Accordingly, the ALJ proceeded to step four and found that Ms. Aragon had the

residual functional capacity to perform light work as defined in 20 C.F.R. § 416.967(b).  The

ALJ also found that Ms. Aragon

> is limited to no kneeling, crouching, crawling and only occasional overhead
> reaching.  The claimant is also limited to simple work related decisions with few
> workplace changes.  Finally, the claimant should have only occasional and
> superficial interactions with the general public.

Tr. 20.  The ALJ concluded at step four that Ms. Aragon had no past relevant work.  Tr. 24.  At

step five, the ALJ determined that based on her age, education, work experience, RFC, and the

testimony of the VE, that there were jobs existing in significant numbers in the national economy

that Ms. Aragon could perform, and she was, therefore, not disabled.  Tr. 24-25.

Ms. Aragon argues that: (1) the ALJ failed to give specific, legitimate reasons for

rejecting the opinion of examining psychological consultative examiner Richard Reed, Ph.D.;

(2) the ALJ failed to incorporate all of the "moderate" limitations assessed by the nonexamining

State agency psychological consultants; and (3) the ALJ failed to include a function-by-function

assessment of Ms. Aragon's mental work-related abilities.  Doc. 17 at 14-25.  The ALJ's

ultimate conclusion may be correct – Ms. Aragon may not be disabled.  The process the ALJ

followed in reaching this conclusion, however, was flawed and requires remand for further

proceedings consistent with this Opinion.

---

[3] The ALJ found no medically determinable impairments related to Ms. Aragon's complaints of knee pain, back pain, and learning disorder.  (Tr. 18.)

### A. Relevant Mental Impairment Evidence

#### 1. Presbyterian Medical Services

On February 23, 2012, LPCC Pam Hartman of Presbyterian Medical Services completed a Behavioral Health Assessment of Ms. Aragon. Tr. 265-77. Ms. Aragon presented with complaints of severe depression and anxiety due to physical problems and a long history of abuse by family members. Tr. 265. LPCC took Ms. Aragon's various histories and made Axis I diagnoses of Major Depressive Disorder, Recurrent, Severe (Code 296.33) and Post-Traumatic Stress Disorder (Code 309.81). Tr. 274. LPCC Hartman assessed a GAF score of 30.[4] (*Id.*)

On March 22, 2012, a medical doctor at Presbyterian Medical Services[5] evaluated Ms. Aragon and performed a mental status exam. Tr. 278-80. The doctor made Axis I diagnoses of Panic Disorder without agoraphobia; Post-Traumatic Stress Disorder; and Major Depressive Disorder. Tr. 280. The doctor discussed prescription drug therapy options, recommended that Ms. Aragon continue to see a therapist, and scheduled a follow up appointment.[6] *Id.*

#### 2. Richard Reed, Ph.D., P.A.

On June 24, 2013, Ms. Aragon presented to examining State agency psychological consultant Richard Reed, Ph.D., P.A., for a mental status evaluation. Tr. 338-41. Dr. Reed reviewed certain documents[7] and took Ms. Aragon's histories. Tr. 338-39. Dr. Reed performed

---

[4] A GAF score of 21-30 indicates that behavior is considerably influenced by delusions or hallucinations or serious impairment in communication or judgment (*e.g.,* sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) or inability to function in almost all areas (*e.g.,* stays in bed all day; no job, home, or friends). *See Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders* (4th ed. 2000) at 34.

[5] The physician's signature is illegible; however, LPCC Hartman indicated in her Behavioral Assessment notes that Ms. Aragon would be psychiatrically evaluated by Dr. Hauser. (Tr. 275.)

[6] The Administrative Record does not contain any additional records from Presbyterian Medical Services related to Ms. Aragon's alleged mental impairments.

[7] Dr. Reed reviewed an August 31, 1989, note related to Ms. Aragon's being teased about being pregnant in high school; a February 2, 2010, consultative evaluation by Dr. Lev; a March 22, 2012, initial evaluation related to Ms. Aragon's mental impairments; and a letter provided by Attorney Michael Armstrong. (Tr. 338.)

a mental status exam and observed that Ms. Aragon did not appear anxious during the evaluation, was mildly depressed, was able to sit through the evaluation without difficulty, communicated well and was pleasant, had normal thought content and processes, and had fair to poor insight and judgment. Tr. 339. Dr. Reed estimated that her current level of cognitive functioning was in the low average range of intelligence. *Id.* Dr. Reed made Axis I diagnoses of Dysthymic Disorder; Marijuana Abuse Disorder; r/o Posttraumatic Stress Disorder; r/o Anxiety Disorder, NOS; and r/o Learning Disorder, NOS. *Id.* Dr. Reed assigned a GAF score of 55.[8] Dr. Reed assessed that Ms. Aragon had *moderate* functional limitations in her ability to (1) understand and remember detailed or complex instructions; (2) maintain attention and concentration; (3) concentrate and persist at tasks of basic work; (4) interact with co-workers; (5) interact with supervisors; (6) adapt appropriately to changes in the work place; and (7) use public transportation or travel to unfamiliar places. Tr. 340. Dr. Reed further noted that Ms. Aragon had a problem with alcohol or other substances of abuse that would affect her ability to function in a work setting. *Id.*

### 3. Susan Daugherty, Ph.D.

On March 29, 2013, nonexamining State agency psychological consultant Susan Daugherty, Ph.D., reviewed the medical evidence record[9] and found that Ms. Aragon had *moderate* limitations in her ability to (1) carry out detailed instructions; (2) maintain attention

---

[8] A GAF score of 51-60 indicates moderate symptoms (*e.g.,* flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (*e.g.,* few friends, conflicts with peers or co-workers). *See Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders* (4th ed. 2000) at 34.

[9] Dr. Daugherty reviewed Ms. Aragon's Adult Function Report; a February 1, 2010, mental status consultative exam report; a March 22, 2012, mental health evaluation; and Dr. Reed's mental status evaluation report. (Tr. 75-76.)

7

and concentration for extended periods; (3) sustain an ordinary routine without special supervision; (4) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (5) accept instructions and respond appropriately to criticism from supervisors; (6) respond appropriately to changes in the work setting; and (7) set realistic goals or make plans independently of others. Tr. 74-75. Dr. Daugherty assessed that Ms. Aragon was "able to perform work where interpersonal contact is incidental to work performed, *e.g.,* assembly work; complexity of tasks is learned and performed by rote, few variables, little judgment; supervision required is simple, direct and concrete (unskilled)." Tr. 76.

### 4. Paul Cherry, Ph.D.

On October 1, 2013, nonexamining State agency psychological consultant Paul Cherry, Ph.D., reviewed Ms. Aragon's medical evidence record at reconsideration and affirmed Dr. Daugherty's March 29, 2013, assessment. Tr. 90-92.

### B. The ALJ's Reasons for the Weight She Accorded the Examining and Nonexamining Psychological Consultant Opinion Evidence Are Insufficient and Incapable of Meaningful Review

The ALJ accorded the examining and nonexamining State agency psychological consultant opinion evidence partial weight. In doing so, she explained, as to Dr. Reed, that (1) he had only examined Ms. Aragon once; (2) did not base his opinion on the most recent evidence of record; and (3) did not have the benefit of the entire record available at the time of the hearing. Tr. 22. The ALJ explained, as to Drs. Daugherty and Cherry, that (1) they did not have the benefit of the entire record presented at the hearing; and (2) they did not have the opportunity to examine Ms. Aragon. Tr. 23. Ms. Aragon argues that the reasons the ALJ offered

for the weight she accorded Dr. Reed's opinion are neither specific nor legitimate, and that the ALJ engaged in picking and choosing from Dr. Daugherty's and Dr. Cherry's opinions resulting in an incomplete and incorrect RFC. Doc. 17 at 14-21. The Commissioner contends that the ALJ reasonably considered the State agency psychological consultant opinions and that the ALJ's RFC of restricted, unskilled work is generally compatible with the moderate functional limitations they assessed. Doc. 19 at 9-16.

The applicable regulations and case law require an ALJ to consider all medical opinions and discuss the weight assigned to those opinions. *See* 20 C.F.R. §§ 416.927(c) and 416.927(e)(2)(ii); *see also Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) ("[a]n ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional."). "An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin*, 365 F.3d at 1215. (citing *Goatcher v. United States Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995)).[10] An ALJ's decision need not expressly apply each of the six relevant factors in deciding what weight to give a medical opinion. *Oldham v. Astrue*, 509 F3d. 1254, 1258 (10th Cir. 2007). However, the decision must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and reasons for that weight." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). The ALJ's decision for according weight to

---

[10] For claims filed before March 27, 2017, these factors include the examining relationship, treatment relationship, length and frequency of examinations, the degree to which the opinion is supported by relevant evidence, the opinion's consistency with the record as a whole, and whether the opinion is that of a specialist. *See* 20 C.F.R. § 416.927(c)(2)-(6).

medical opinions must be supported by substantial evidence. *Hackett v. Barnhart*, 395 F.3d 1168, 1174 (10th Cir. 2005).

The parties debate whether an ALJ can reject or reduce the weight of opinions from examining and consulting doctors simply because those doctors necessarily have limited or no interactions with a claimant. Doc. 17 at 17-18, Doc. 19 at 13. The "conflict" in the parties' respective positions, however, is illusory - both are correct. Just because an ALJ cannot reject the opinion of a treating or consulting doctor simply because that doctor had limited or no interaction with a patient does not mean the extent of a doctor's interaction is irrelevant.

In their debate, the parties really just point out that there is a hierarchy among doctors. *See Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) ("[t]he opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the clamant is entitled to the least weight of all."). This hierarchy is largely based on the extent to which a doctor has examined or treated a claimant. Treating doctors have the most extensive relationship with a claimant and so are given the most deference. *Id.* And, all other things being equal, the opinion of a treating doctor who has seen a claimant more is placed above the opinion of a treating doctor who has seen a claimant less. Next come examining doctors, whose opinions (all other things being equal) are placed above the opinions of consulting doctors, who have never seen a patient. *Id.*

This hierarchy provides a mechanism for ALJs to resolve the opinions of various doctors that might be in conflict. In this case, the ALJ does not discount the opinions of the consulting and examining doctors by comparing those opinions to conflicting opinions of other doctors. This fact begs the question, "if the ALJ is giving only 'partial weight' to these examining and consulting doctors, *to whose other opinion is the ALJ deferring?"* An ALJ, who is not a

medical provider, must rely on medical providers to determine a claimant's medical condition. If the record contains no contrary medical evidence, on what is the ALJ relying to discount the opinion of the doctors whose opinions are part of the record? Thus, the problem with the ALJ's discounting is not that she considered the limited interaction the treating and consulting doctors had with claimant but, rather, that she cited no alternative medical opinion.

The only other basis the ALJ provides for discounting the opinions of the doctors on the record is that, at the time these doctors reached their opinions, they did not have the benefit of the entire record that was available to the ALJ. (Tr. 22-23). But this alternative basis is just as incomplete. It raises a question very similar to that above – what in the record not available to these doctors undermines their opinions? The ALJ never says. While an ALJ may discount the opinions of examining and consulting doctors, the ALJ must provide a valid reason for doing so. Because the ALJ failed to provide valid reasons for discounting the opinions of the examining and consulting doctors, the ALJ committed reversible error.

And the Commissioner's post hoc rationalization cannot cure this error. Although, as evidence of Ms. Aragon's "normal" mental status, the Commissioner discussed certain primary care treatment provider notes that were generated in the months after the State agency psychological consultants rendered their opinions, the ALJ's decision is silent as to any of this evidence.[11] As a result, assuming without deciding that the Commissioner came up with an otherwise winning argument, because the argument did not originate from the ALJ's decision, the Court may not adopt it. *Watkins*, 350 F.3d at 1301; *Haga v. Astrue*, 482 F.3d 1205, 1207-08

---

[11] Most of the post-opinion treatment notes are from the Center for Aesthetic Medicine where Ms. Aragon received her primary care. Many of the treatment notes reflect prescription therapy for ongoing anxiety. (Tr. 487-88, 492-93, 503-04, 505-06, 521-22.)

(10th Cir. 2007) (finding the court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision).

The ALJ's failure to explain her reasons for reducing the opinions of the examining and consulting physicians to "partial weight," however, does not end the Court's analysis. The Commissioner also argues that, by limiting Ms. Aragon to simple unskilled work, the ALJ did in fact incorporate the moderate limitations of the examining and consulting doctors into Ms. Aragon's residual functional capacity. Doc. 19 at 10. This argument fails for at least two reasons.

First, the RFC does not limit Ms. Aragon to "simple unskilled work." Instead, the ALJ finds, "[t]he claimant is also limited to simple work related decisions with few workplace changes." (Tr. 20). Saying that a person can make only simple work-related decisions is different than saying a person can perform only simple work.

Second, even assuming a limitation to "simple work related decisions" means a claimant can perform only simple work, a limitation to simple work does not address some of the moderate limitations at issue. For instance, doctors Reed, Daugherty, and Cherry all found Ms. Aragon to have moderate limitations interacting with coworkers and supervisors. "The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. SSR 85–15, 1985 WL 56857, at *4 (1985). The Tenth Circuit quoted this regulation and, although unpublished, issued a persuasive decision addressing a similar situation in *Jaramillo v. Colvin*, 576 F. App'x 870 (10th Cir. 2014).

12

In *Jaramillo*, the ALJ restricted the claimant to simple, routine, repetitive, and unskilled tasks in an effort to accommodate, among other things, a psychologist's finding that the claimant was moderately limited in his ability to work without supervision. *Id.* at 876. The Tenth Circuit examined the requirements of unskilled work and held that none of the basic mental abilities of unskilled work captured a moderate limitation on the ability to work without supervision. *Id.* Significantly, the court also rejected the argument that a moderate limitation on the ability to work without supervision was accounted for in an RFC limiting the claimant to simple, routine, and repetitive tasks. *See id.* ("None of the basic mental abilities of unskilled work ... captures any of the three moderate limitations Dr. Mellon found (carry out instructions, attend and concentrate, and work without supervision), nor do the additional limitations to simple, routine, and repetitive tasks."). Similarly, the RFC in this case fails to address the moderate limitation in Ms. Aragon's ability to work without supervision.

In addition, doctors Daugherty and Cherry determined Ms. Aragon to have moderate limitations in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Tr. 74-75. As stated in POMS § DI 25020.010, the mental abilities needed to understand, carry out and remember simple instructions and the "mental abilities critical for performing unskilled work" include the ability to "complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods." The Commissioner makes no specific argument and cites no authority that the ALJ accounts for this moderate limitation in determining Ms. Aragon's RFC. Thus, the Court concludes that the ALJ failed to account for this moderate limitation as she was required to do. As a result, regarding

13

the moderate limitations set forth in the above two paragraphs, the Court rejects any contention that the ALJ adequately addressed these limitations by limiting Ms. Aragon's RFC to simple work related decisions.[12]

### C. Remaining Issues

The Court will not address Plaintiff's remaining claims of error because they may be affected by the ALJ's treatment of this case on remand. *Wilson v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

## IV. Conclusion

For the reasons stated above, Ms. Aragon's Motion to Reverse and Remand for a Rehearing With Supporting Memorandum is **GRANTED.** The Court reverses the Commissioner's decision denying Plaintiff benefits and remands this action to the Commissioner to conduct further proceedings consistent with this Opinion.

**IT IS SO ORDERED.**

*/s/ Steve Yarbrough*
**STEVEN C. YARBROUGH**
**United States Magistrate Judge,**
**Presiding by Consent**

---

[12] The ALJ's decision itself also undermines the Commissioner's argument. Immediately after reducing the opinion of Dr. Reed to "partial weight", the ALJ stated that "[s]ome of Dr. Reed's findings are consistent with the residual functional capacity above." The ALJ's statement that some, and so not all, of Dr. Reed's findings are consistent with Ms. Aragon's RFC refutes any argument that the RFC incorporates all of Dr. Reed's limitations.